IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                                         Civ. No. 10-647

11510 ANAHEIM AVE. NE,
ALBUQUERQUE, NM 87122

MORE PARTICULARLY DESCRIBED AS:
LOT NUMBERED EIGHT (8) IN BLOCK NUMBERED SIXTEEN (16)
OF TRACT NUMBERED TWO (2), UNIT NUMBERED ONE (1), OF NORTH
ALBUQUERQUE ACRES, A SUBDIVISION OF A TRACT OF LAND IN
SCHOOL DISTRICTS THREE (3) AND FOUR (4), ALBUQUERQUE,
BERNALILLO COUNTY, NEW MEXICO, AS THE SAME IS SHOWN
AND DESIGNATED ON THE PLAT OF SAID SUBDIVISION, FILED IN THE
OFFICE OF THE COUNTY CLERKS OF BERNALILLO COUNTY,
NEW MEXICO, ON MARCH 23, 1931, IN PLAT BOOK D, FOLIO 130,

    *Defendant*,

and

BRADLEY CHRISTIANSEN AND
SARA CHRISTIANSEN,

    *Claimants.*

## Verified Complaint for Forfeiture *In Rem*

Plaintiff states:

### JURISDICTION AND VENUE

1.    This is a civil action *in rem* for forfeiture of defendant which is located in the District of New Mexico; and during the pendency of this action defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.  The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.  Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.  The "res" or property which is the subject of this action consists of a parcel of real estate, including the residence, garage, outbuildings, and all other appurtenances thereto and fixtures and improvements thereon, located at 11510 Anaheim Ave. NE, Albuquerque, New Mexico, and more particularly described as:

MORE PARTICULARLY DESCRIBED AS:

LOT NUMBERED EIGHT (8) IN BLOCK NUMBERED SIXTEEN (16) OF TRACT NUMBERED TWO (2), UNIT NUMBERED ONE (1), OF NORTH ALBUQUERQUE ACRES, A SUBDIVISION OF A TRACT OF LAND IN SCHOOL DISTRICTS THREE (3) AND FOUR (4), ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT OF SAID SUBDIVISION, FILED IN THE OFFICE OF THE COUNTY CLERKS OF BERNALILLO COUNTY, NEW MEXICO, ON MARCH 23, 1931, IN PLAT BOOK D, FOLIO 130.

(Hereafter referred to as "Defendant Property.")

## PARTIES AND CLAIMANTS

5.  The following persons may claim an interest in Defendant Property:

    (a). Bradley Christiansen at 11510 Anaheim Ave NE, Albuquerque, NM 87122 whose attorney is Robert. R. Cooper, 1011 Lomas Blvd NW, Albuquerque, NM 87102-1952;

    (b). Sara Christiansen at 11510 Anaheim Ave NE, Albuquerque, NM 87122.

## FACTS

The circumstances from which the claim for forfeiture of Defendant Property arise are:

6. In February 2008, the Defense Criminal Investigative Service (DCIS) and the Federal Bureau of Investigation (FBI) initiated an investigation into Laguna Construction Company (LCC) and several of its employees, to include Bradley Christiansen (Christiansen). The investigation was initiated due to several reports that LCC upper management was involved in a bid rigging scheme with regard to Department of Defense (DOD) contracts that LCC was performing in Iraq. Information was also received that indicated that Christiansen was receiving illegal kickbacks in exchange for awarding subcontracts to preferred subcontractors that paid him kickbacks. The subcontractors that were allegedly paying kickbacks were Mercury Development (Mercury), Tigris River Company (TRC), Sigma Contracting (Sigma) and Yacoub and Ramzi Snobar Company (Snobar).

7. On or about February 18, 2009, three federal search warrants were executed on the LCC offices in Albuquerque, NM and San Antonio, TX as well as the residence of Christiansen were searched. DCIS and FBI Agents investigated that a purchase of a Porsche Cayman for Christiansen by Mustapha Ahmad (Ahmad), the owner of Mercury. Mercury has been awarded approximately $37,000,000 in subcontracts from LCC since 2004.

8. During an interview being conducted with Christiansen, Christiansen was asked several times if he had ever received anything of value from a subcontractor that LCC had done business with. Christiansen replied that he had not . Later in the interview

Christiansen was asked if he had performed any consulting work for any subcontractors who were doing or had done business with LCC. Christiansen responded that he had not. Christiansen then informed agents that he had performed consulting work for an electrical company in Amman, Jordan but reiterated that the company was not and had not been a subcontractor for LCC. Christiansen informed agents that he had purchased the Porsche for his wife, Sara Christiansen, and that it was a birthday present. Christiansen told agents that he had written a check for $40,000 to Porsche of Albuquerque for the car and he alone paid for it. Christiansen was then informed of the information that had been previously obtained from his wife who told agents they traded in the Cayman for a Torga, which was in the garage. Christiansen then told agents that he had received a Porsche Cayman from Mustapha Ahmad. When asked why Ahmad would give Christiansen a Porsche, Christiansen responded that it was because of the Iraq Reconstruction contracts Mercury received from LCC.

9. During the investigation, agents were able to locate documents that showed Christiansen had opened a consulting company called "BGC Consulting" (BGC) as well as a bank account for BGC. BGC bank account received over $100,000 in wire transfer payments from Snobar between April and August 2008. Snobar received approximately $17,000,000 in subcontracts from LCC since 2004. Christiansen's three children, two of which are minors, received wire transfer payments from Snobar to their bank accounts. Several wire transfer payments were made from Snobar to Jason Safro (Safro). Safro was a personal friend of Christiansen's and had been building a 1965 Cobra Kit Car that he and Christiansen planned to sell for profit. Safro was interviewed and told agents that he had

received approximately $24,000 in wire transfer payments to fund the project and received several cash/check payments from Christiansen along the way. Safro was told by Christiansen that the money being wired to him was from Christiansen's bank account in Jordan.

10. In May 2010 agents located an excel spreadsheet titled "Christiansen's Remodel Billing Summary." This summary contains a complete breakdown of work done to Christiansen's home starting in September 2006. The work was being performed by "The Fixer" who is a general contractor. A review of the spreadsheet shows that between September 2006 and July 2007 Christiansen was billed for and paid The Fixer approximately $667,844. A review of the "Notes" section of the spreadsheet as well as other documents reviewed indicate that The Fixer was paid using three forms of payment, $329,500 in cash, $59,344 in wire transfers, and $279,000 in checks.

11. During an interview with Chris Pennebaker (Pennebaker), the owner of The Fixer, he told agents that Christiansen told him that the wire transfers were coming from Christiansen's bank account in Jordan. Pennebaker told agents that he found it very odd to be paid in three different forms. Pennebaker told agents that Christiansen asked him if it was ok if Christiansen paid him in cash to which Pennebaker said it was ok, but stated that "it was a pain in the ass to count it and take it to the bank and count it again, and if we were off by $100 I had to go back to Brad's house to get the rest." Pennebaker told agents that Sara usually paid him the cash because Brad was usually out of town. Pennebaker told agents that Sara retrieved the cash from inside the residence. A review of Christiansen's bank account activity during the time of the remodel indicates that the $329,000 in cash, that

5

was paid to The Fixer, came from somewhere other than his bank accounts. Cash withdrawals during this period of time were minimal. The source of the wire transfers used to pay for the renovations to Christiansen's home was Snobar.

## CLAIMS FOR RELIEF

12. Defendant Property is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because the real property constitute or are derived from property traceable to a violation of 18 U.S.C. § 1344, or a conspiracy to commit such offense.

13. Defendant Property is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because the real property constitute or are derived from property traceable to a violation of 18 U.S.C. § 1341, or a conspiracy to commit such offense.

WHEREFORE: Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

*/s/ S.R.K.*

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P. O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

## 28 U.S.C. § 1746 Declaration

I am a Special Agent with the Department of Defense, Office of the Inspector General Defense Criminal Investigative Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 7/9/10

Joshua Hyde, Special Agent
Department of Defense
Office of the Inspector General
Defense Criminal Investigative Service